IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


POTTHOFF V. KORNEGAY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


SANDRA J. POTTHOFF, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF RIVER CANYON, INC.,
A NEBRASKA CORPORATION, AND AS PERSONAL REPRESENTATIVE OF THE
ESTATE OF ELVIRA M. POTTHOFF, DECEASED, APPELLEE,
V.

MARIANNE K. KORNEGAY AND RIVER CANYON, INC., A NEBRASKA CORPORATION, APPELLANTS.


Filed June 9, 2020.    No. A-19-947.


Appeal from the District Court for Red Willow County: RICHARD A. BIRCH, Judge. Affirmed.

Steven W. Hirsch for appellant Marianne K. Kornegay.

Terry L. Rogers for appellant River Canyon, Inc.

James R. Korth, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellee.


MOORE, Chief Judge, and RIEDMANN and PIRTLE, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Shareholders of a closely held family farm corporation brought an individual and a derivative action against the corporation and another shareholder, setting forth claims for an accounting, breach of fiduciary duty, tortious conversion, and shareholder's right to dissent. The claim for an accounting was dismissed prior to trial, pursuant to a summary judgment motion. The defendants brought a counterclaim, alleging fraudulent misrepresentation, fraudulent concealment, conversion, waste and mismanagement, and self-dealing. Following a bench trial, the district court for Red Willow County entered judgment in favor of the plaintiffs with respect to the claim for

- 1 -

breach of fiduciary duty and in favor of the defendants on their claim of conversion. The defendants appealed. For the reasons set forth herein, we affirm.

BACKGROUND

River Canyon, Inc., is a family farming corporation, incorporated in 1976, by Lloyd Potthoff's mother. The shares of the corporation were subsequently transferred, so that Lloyd had 26,001 shares; his wife, Elvira Potthoff, had 26,000 shares; and their five children, Stephen Potthoff, Larry Potthoff, Darrell Potthoff, Sandra Potthoff, and Marianne Kornegay, each had 9,600 shares. Darrell has not been a stockholder since he filed a Chapter 7 bankruptcy in 1992, which resulted in his shares of stock being absorbed by the corporation.

At some point, Lloyd and Elvira began dissolution of marriage proceedings. A letter from Lloyd, addressed to "Dear Stockholders" and dated December 24, 2001, states his belief that there might be a takeover of River Canyon at the annual meeting to be held in January 2002 and that he did not have enough votes to hold off the takeover. Minutes from a board of directors meeting held on January 4, list the directors present as Elvira, Sandra, and Stephen. A motion to remove "the current slate of officers who have served since the Special Board of Directors meeting held Dec. 11, 2001," was passed. The minutes do not specify who the current officers prior to removal were. The new slate of officers elected to serve, "until the next annual meeting is called," were Elvira, President and Treasurer; Stephen, Vice President; and Sandra, Secretary. Other actions taken at the meeting included passing a resolution to notify the present listed operator of River Canyon (Lloyd and Elvira, a coproducer) that River Canyon was appointing Elvira "as operator for the proceeding years until removed by written notification to the Farm Service Agency (FSA) of Red Willow County." Notification of "the change of control" of River Canyon to appropriate service providers of the corporation was discussed, voted on, and approved.

In 2003, while the divorce was pending, Lloyd died. Elvira continued to run River Canyon after Lloyd's death. In 2004, Keith Arterburn was appointed personal representative of Lloyd's estate, of which Marianne is the sole beneficiary.

Certain orders from the Red Willow County Court in Lloyd's estate were entered into evidence in the present matter. In a 2006 order, the county court found that River Canyon had not paid real estate taxes on lands owned by it, had failed to lease the pasture ground it owned until the day of a July 13 hearing, and that waste was occurring with respect to River Canyon. In a March 2008 order with respect to an inventory in Lloyd's estate, the county court found that certain notes due from Larry and Stephen to River Canyon were uncollectable, beyond the statute of limitations, and of no value to the corporation. It determined, however, that a note from Elvira to River Canyon was an asset of the corporation. Finally, the court determined that the balance on a note from River Canyon to Lloyd was still due and payable and had a value of $36,792.85 as of the date of his death.

At some point in 2006, Arterburn filed a motion in Lloyd's estate, seeking to liquidate the assets of River Canyon. A special meeting of the corporation's board of directors was held on October 5. According to the minutes of that meeting, the directors at that time were Elvira, Stephen and Sandra. At that meeting, the board authorized filing a Chapter 12 bankruptcy as a means of preserving River Canyon's assets. A Chapter 11 bankruptcy was filed but was subsequently

dismissed. The board again authorized a Chapter 12 bankruptcy filing in November 2009. The second bankruptcy filing was dismissed as well at some point.

In 2009, Arterburn, as Personal Representative of Lloyd's estate, filed an action against River Canyon and its stockholders in the district court case (No. CI 09-70), alleging, among other things, that Elvira had been in full control of River Canyon since Lloyd died, that assets had been dissipated and wasted, that Arterburn had been unable to obtain an accounting regarding River Canyon, and that there was a deadlock in the management of the corporation. Arterburn requested relief on behalf of Lloyd's estate, including the appointment of a receiver.

On June 16, 2010, the district court entered an order in case No. CI 09-70, appointing a receiver to run the affairs of River Canyon "until such time as the affairs of the business of the corporation can be wound up." The receiver's first report to the court in that case documented Elvira's lack of cooperation and transactions she made without his approval.

On March 5, 2013, pursuant to an order from the district court in case No. CI 09-70, a special meeting of the River Canyon shareholders was held. At that meeting, a new board of directors was elected, consisting of Marianne, Sandra, and Arterburn, and newly elected officers were Marianne (President, Secretary, and Treasurer) and Arterburn (Vice President). The new board passed motions to sell all of the land owned by River Canyon and to authorize a particular company to sell the land at public auction. The board also passed corporate resolutions to offset the shares of Stephen and Larry against debts each owed the corporation (Stephen's, principal in excess of $45,944.94; Larry's, principal in excess of $40,462.08).

Following the March 2013 meeting, the land owned by River Canyon was sold. The net proceeds of the sale, $710,268.72, were deposited into River Canyon's bank account on May 24, 2013. Prior to that deposit, the account had a balance of $11,490.33, resulting in a total after the deposit of $721,759.05. At that point the total assets of River Canyon consisted of the bank account, a pasture rent payment of $5,400, and a promissory note owed by Elvira with a remaining balance of $11,284.24. After the real estate proceeds were deposited, Marianne made distributions totaling $641,951.02 from River Canyon's bank account to Lloyd's estate ($417,797.75) and to Marianne ($224,153.27).

Stephen died in 2014, and Elvira inherited his estate.

In November 2015, the Articles of Incorporation of River Canyon were amended to permit reducing the number of directors to one, and Marianne became the sole director. By that time, Lloyd's estate had been completed, and Marianne, who was the sole beneficiary of Lloyd's estate, had replaced Arterburn as its personal representative.

On April 6, 2015, Sandra and Elvira (both individually and derivatively on behalf of River Canyon) commenced this action against Marianne and River Canyon. In their complaint, they alleged that distributions Marianne made to Lloyd's estate and herself following the sale of River Canyon's real estate were improper, and they set forth claims for an accounting, breach of fiduciary duty, tortious conversion, and shareholder's right to dissent. Elvira died in 2016, and Sandra was appointed personal representative of her estate. After Elvira's death, the district court entered an order of reviver, reviving Elvira's claims in Sandra's name as Personal Representative for her estate. The plaintiffs' claim for an accounting was subsequently dismissed with prejudice, pursuant

to a motion for partial summary judgment, after the parties agreed that the defendants had provided the accounting and records requested in that claim.

In their answers, Marianne and River Canyon denied the allegations that Marianne's actions were improper. Marianne and River Canyon also filed a counterclaim against the plaintiffs, alleging fraudulent misrepresentation, fraudulent concealment, conversion, waste and mismanagement, and self-dealing.

Trial was held in May 2019. In addition to the background summarized above, evidence was adduced showing that during the period from 2002 through 2013, Elvira and Sandra excluded the defendants from operation of the corporation, did not provide any accounting, denied access to corporate records, and did not hold annual meetings after January of 2002. The only minutes of board meetings produced at trial were the January 2002 minutes referenced above, as well as the corporate resolutions from when the officers voted to file bankruptcy; there were no minutes of any meeting of the shareholders during that period of time. The record shows that Elvira did not properly file income tax returns or pay real estate taxes, and was spending money for improper purposes. Specifically, after the receiver had been appointed, Elvira continued to make transactions from the corporate checking account, from June 15, 2010, to March 21, 2011, totaling $6,666.07.

Evidence was also adduced regarding the payments made by Marianne to herself and Lloyd's estate and about the alleged debts of River Canyon to Marianne and Lloyd. Marianne testified that the payments to herself and Lloyd's estate were for back wages owed to them, and for money they loaned to the corporation when she and Lloyd were running the corporation from approximately 1989 through 2001. Marianne testified that, based on the "verbal understanding" she and Lloyd reached in approximately 1988, the corporation owed them $24,000 annually between 1989 and 2001 for labor they provided to River Canyon. Marianne testified that after conducting some "cash flow planning for the bankruptcy court," they estimated "how much we would put in for our labor." According to Marianne, they decided that "in order to make this plan confirmed that we would not at the time put down our labor in the cash flow planning," but that later, "whenever we could, we'd come back and . . . re-pay Lloyd and I for our labor." She also testified that Lloyd had previously been paid $2,000 a month.

The district court received two exhibits containing handwritten calculations, which Marianne agreed she had prepared to "determine how much of the corporate assets [she] would pay to [herself] and to [Lloyd's] estate for the labor [they'd] put in from 1989 to 2001." The calculations on one of the exhibits, using an interest rate of 10.5 percent, show an estimated partial payment due at the end of 2001 of $168,081.61, and Marianne wrote checks to herself and Lloyd's estate for this amount in November 2013. The calculations in the other document, using the same interest rate, arrive at a total of $56,071.66, and Marianne made additional payments to herself and Lloyd for this amount. With respect to the interest rate she used in her calculations, Marianne testified that the family had used that interest rate on previous occasions.

The district court received into evidence a 2013 income and expense report for River Canyon, prepared by the corporation's CPA, which documents the actions taken by Marianne after she became president of the corporation and the associated costs of those actions, including filing tax returns, paying taxes, paying accounting and legal fees, and paying necessary office expenses.

Marianne wound up the pending business of River Canyon by the end of its fiscal year on or about November 30, 2013.

The district court entered an order on August 30, 2019, ruling on the parties' remaining claims. With respect to the plaintiffs' claim for breach of fiduciary duty, the court entered judgment in favor of Sandra against Marianne in the amount of $84,770 and in favor of Sandra as Personal Representative of Elvira's estate against Marianne in the amount of $213,615.76, subject to certain other provisions of the court's order. The court dismissed the other remaining claims of the complaint with prejudice. As to the defendants' counterclaim, the court entered judgment on the claim for conversion on behalf of the defendants and against Sandra as Personal Representative of Elvira's estate in the amount of $6,666.07. The court determined that the amount of the defendants' judgment should be set off against the judgment awarded to Elvira's estate, resulting in a net judgment for the estate of $206,949.69. The court dismissed the defendants' remaining claims with prejudice. We have set forth relevant details of the court's findings in the analysis section below. The defendants appealed to this court, and we have referred to them as "the Appellants" in our discussion of their assignments of error.

ASSIGNMENTS OF ERROR

The Appellants assert, restated, that the district court erred in (1) awarding insufficient damages to River Canyon for Elvira's actions while President of the corporation, (2) failing to find Sandra liable for losses she caused the corporation, (3) finding that certain debts owed by River Canyon to Marianne were invalid, and (4) finding that Marianne may have had the burden of proving the validity of River Canyon's debt to her.

STANDARD OF REVIEW

A shareholder's derivative action which seeks an accounting and the return of money is an equitable action. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Strohmyer v. Papillion Family Medicine*, 296 Neb. 884, 896 N.W.2d 612 (2017).

ANALYSIS

*Sufficiency of Damages.*

The Appellants assert that the district court erred in awarding insufficient damages to River Canyon for Elvira's actions while President of the corporation. With respect to the claim for conversion presented in the counterclaim, the court entered judgment against Sandra as Personal Representative of Elvira's estate in the amount of $6,666.07, which award was then set off against the judgment awarded to Elvira's estate, and the court dismissed the remaining claims set forth in the counterclaim. In analyzing the counterclaim, the court noted that Elvira, Sandra, and Stephen were in control of the corporation from 2002 until March of 2013, and during that time, they occupied a fiduciary relation to the corporation and its shareholders. The court first found that the

evidence did not support a finding of fraud and dismissed the first cause of action in the counterclaim for fraudulent misrepresentation. With regard to the remaining causes of action, while the court agreed that Elvira (along with Sandra and Stephen) excluded the Appellants from the operation of the corporation and mismanaged the corporation, the court found that "determining the amount of damages caused by the Plaintiffs' improper actions is made difficult by the passage of time, the lack of corporate records, the death of Elvira in 2016, and the death of Stephen in 2014." Nevertheless, the court found the evidence was sufficient to find that Elvira converted corporate funds after the receiver had been appointed as set forth above.

In support of their first assignment of error, the Appellants refer to certain evidence and cite some general propositions of law with respect to damages, but they do not explain how that evidence and those propositions support a different result than that reached by the district court. Most of the evidence referenced by the Appellants does not include any monetary information from which damages could be calculated, and the only such evidence they reference supports the damages calculation made by the court. The evidence shows that mismanagement of River Canyon's assets occurred while Elvira was in charge and that after the appointment of the receiver, Elvira continued to make transactions and reduced the corporate account balance from $7,608.19 (in June 2010) to $942.12 (in March 2011), a difference of $6,666.07. The Appellants do not point to any evidence from which additional damages could be calculated. Because the amount of damages awarded by the court is supported by our own review of the record, we find no error.

*Sandra's Liability.*

The Appellants assert that the district court erred in failing to find Sandra liable for losses she caused the corporation. We note that in each claim set forth in their counterclaim, the Appellants asked the court to award joint and several monetary damages against the plaintiffs. As with their first assignment of error, however, the Appellants do little more than refer to some evidence about Sandra and cite a few general propositions of law. They do not present any actual argument showing how the court erred.

The Appellants reference Sandra's testimony in which she agreed that she was "eventually asked to participate in Elvira taking over" the corporation by giving her proxy so Elvira could have a special meeting. Sandra testified that she was living in Colorado at the time and did not come back for any meetings in 2002. She stated that she sent her proxy so she would not have to go to meetings. The Appellants refer to the minutes for the annual meeting of the River Canyon board of directors for January 4, 2002, which state that Sandra was present (the meeting at which Elvira became president of the board and was appointed as operator of the corporation). The Appellants also note that Sandra signed resolutions to allow the bankruptcy filings in 2006 and 2009.

The Appellants observe that directors should have a general knowledge of the manner in which the corporate business is conducted, and, where the duty of knowing exists, ignorance because of neglect of duty on the part of a director creates the same liability as actual knowledge and failure to act on that knowledge. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004). All persons who knowingly aid or participate in committing a breach of trust will be held responsible for the resulting loss, and will be held accountable by personal judgment for the value of the property so converted. *Id.* Directors and officers of a corporation are jointly as well as

severally liable if they jointly participate in a breach of fiduciary duty or approve of, acquiesce in, or conceal a breach by a fellow officer or director. *Id.* Where the defendants have acted jointly to breach their fiduciary duties, the risk that any one defendant will be unable to satisfy his or her proportion of liability should be borne by the other wrongdoers, not the wronged party. *Id.*

Presumably, the Appellants are arguing that Sandra had enough knowledge of/participation in the breaches of trust committed by Elvira to also be held liable. However, as noted above, the only damages that the district court found were proven were in the amount of $6,667.07, and these damages were awarded to the Appellants against Elvira's estate, to be offset against the award to Elvira's estate and against the Appellants of $206,949.69. Thus, there is no risk that the Appellants will be unable to satisfy the judgment in their favor on their counterclaim. Accordingly, the court did not err in failing to hold Sandra jointly liable for that amount.

*Validity of Debts.*

The Appellants assert that the district court erred in finding that certain debts owed by River Canyon to Marianne were invalid. In addressing the plaintiffs' claim for damages, the court made detailed findings about the payments made by Marianne to herself and Lloyd's estate and about other debts at issue. The court found that Marianne failed to present sufficient evidence to corroborate her testimony regarding any claim for back wages or debts, with the exception of the promissory note from River Canyon to Lloyd. The court noted that there were no corporate records indicating any indebtedness to either Marianne or Lloyd, there had been no claim for back wages in the bankruptcy filings, and the March 2008 county court order made no reference to any asset of Lloyd's estate for back wages or other money due from River Canyon. The court specifically rejected Marianne's computation of interest on amounts she claimed were due from River Canyon, including the note to Lloyd. The court concluded that, other than as set out in the March 2008 county court order, River Canyon did not have a valid, legal, or enforceable debt to either Marianne or Lloyd for work or loans from 1989 through 2001 and that it was a breach of Marianne's fiduciary duty to the plaintiffs to make payments on those purported debts.

The district court went on to calculate the plaintiffs' damages. First, the court listed the assets of River Canyon after the proceeds from the real estate sale were deposited, which totaled $738,443.29. The court found that the only debt of the corporation was the $36,792.85 note to Lloyd, which resulted in a value for the corporation of $701,650.44. The court then reviewed how the stock in River Canyon was currently held. Finally, the court found as follows:

> When Marianne took over control of River Canyon from Elvira and Sandra in March of 2013, the condition of the corporation can accurately be described as a mess. Because of the manner in which Elvira, with Sandra, had been operating River Canyon for the previous eleven years, when Marianne took over there were numerous legitimate actions that needed to be taken in order to clean up that mess. Marianne took those actions, which included filing tax returns, paying taxes, paying accounting and legal fees, and paying necessary office expenses. Undoubtedly, those steps took a considerable amount of her time. Exhibit 105, in addition to containing inappropriate expenditures, also provides a list of appropriate steps taken by Marianne and reasonable costs attributable there to. The Court has rounded off those expenses to $49,000. The evidence also establishes that as of

November 13, 2013, the end of the corporate year, Marianne had completed those steps and as a practical matter wound up all of the pending business of River Canyon.

In order to calculate damages, it is necessary to include the corporation's reasonable expenses in resolving the problems left by Elvira and Sandra, and therefore $49,000 needs to be deducted from the corporate value of $701,650.44, resulting in the amount of $652,650.44. From that amount needs to be deducted the debt due to Lloyd's estate on the River Canyon note, for $36,792.85, for an amount of $615,857.59. This results in a net value per share of $8.65.

The 2013 sale of the real estate of River Canyon grew out of the action Arterburn filed in Red Willow County District Court, [case No.] CI09-70. The order appointing the receiver stated that the receivership would continue "until such time as the affairs of the business of the corporation can be wound up". . . . With the sale of the real estate, the business of River Canyon had been completed and the only matter left was to windup its affairs. The evidence establishes that the operation of the corporate affairs had been completed by the end of its fiscal year on November 30, 2013. As a result, Elvira's estate, the holder of 26,000 shares, was damaged by Marianne's actions in the amount of $224,900. The amount of Elvira's note to River Canyon is offset against such amount, resulting in the net amount of $213,615.76, and satisfying the note in full. Sandra, the holder of 9,600 shares, was damaged by Marianne's actions in the amount of $83,040.

In support of their third assignment of error, the Appellants argue that the district court erroneously discounted their evidence of amounts due for past labor and other debts because it was uncorroborated by documentation. They argue that this evidence was "never challenged or even questioned by the plaintiffs" and that "it was common practice for this family business, like all small businesses, to minimize documentation and paperwork as much as possible" and to "often rely on trust and verbal commitments even when such is not the best practice." Brief for Appellants at 15. The Appellants conclude that Marianne "should be allowed to recoup her losses and be paid for her work." *Id.*

In finding that the payments Marianne made to herself and to Lloyd's estate following the sale of the River Canyon real estate were not made in payment of valid debts, the district court clearly did not find Marianne's evidence credible. We defer to the court's determination in that regard. Upon our de novo review of the record, we agree that the evidence was insufficient to establish that River Canyon owed Marianne and Lloyd for past labor or for debts other than the note owed to Lloyd. We also note, as do the Appellees, that oral contracts not to be performed within 1 year violate the statute of frauds. See Neb. Rev. Stat. § 36-202(1) (Reissue 2016). The Appellants' third assignment of error fails.

*Burden of Proof.*

The Appellants assert that the district court erred in finding that Marianne may have had the burden of proving the validity of River Canyon's debt to her. In addressing an argument by the Appellants that the plaintiffs had failed to present sufficient evidence to support an award of damages, the court stated, "Assuming that the Plaintiffs have the burden of proof, the Court finds

that they have met their burden." The court went on to state, "If the burden is on Marianne to establish the appropriateness of the payments . . . she has failed to meet that burden. Either way, allocation of the burden regarding the inappropriateness of the payments made by Marianne, and the damages that resulted, does not affect the outcome of this case."

We note that where a fiduciary or confidential relationship exists between the parties to a transaction, the burden of proof is upon the party holding the fiduciary or confidential relationship to establish the fairness, adequacy, and equity of the transaction. *Gallner v. Larson*, 291 Neb. 205, 865 N.W.2d 95 (2015). However, given the district court's determination that Marianne had "failed to establish the appropriateness of the payments" regardless of where the burden of proof was placed, we need not address this assignment of error further. We have already found that the court did not err in its determination as to the validity of debts allegedly owed by River Canyon to Marianne and that in making that determination the court did not find Marianne's evidence credible. Thus, the Appellants' fourth assignment of error has no additional bearing on our determination with respect to the third assignment of error, and we need not discuss it further. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020).

CONCLUSION

The district court did not err in calculating the amount of damages awarded on the Appellants' counterclaim, failing to hold Sandra jointly liable, or in determining that certain debts claimed by Marianne were invalid. And, the Appellants' fourth assignment of error fails for the reasons discussed above.

AFFIRMED.